## STATE, Respondent, v. MARK, Appellant.

(No. 5,352.)

(Submitted October 29, 1923. Decided November 9, 1923.)

[220 Pac. 94.]

*Criminal Law—Unlawful Possession of Narcotics—Statutes—
Title—Shifting Burden of Proof—Power of Legislature—
Evidence — Admissibility — Punishment — Misdemeanor —
Imprisonment.*

Unlawful Possession of Narcotics—Statute—Title—Sufficiency.
  1. *Held,* that the intent of the legislature to prohibit the possession
  and use of narcotics under certain conditions is sufficiently expressed
  in the title of Chapter 202, Laws of 1921 (secs. 3189–3202, Rev.
  Codes 1921).

Statutes—Title—When Sufficient.
  2. If the subject of an enactment is fairly expressed in its title,
  it is sufficient to meet the requirement of section 23, Article V,
  Constitution, and a court may not hold a title void merely because
  in its opinion a better one might have been used.

Unlawful Possession of Narcotics—Amendatory Statute—Defective Title.
  3. *Held,* that the title of Chapter 36, Laws of 1923, amending
  "section 3202 of Chapter 202 of the Revised Codes of 1921, pro-
  viding a penalty," is so defective as to render the Chapter void,
  it being impossible to determine therefrom what Act it was in-
  tended to amend nor what offense a penalty was provided for.

Same—Shifting Burden of Proof—Power of Legislature.
  4. One accused of crime has no vested right in any presumption
  or rule of evidence, and the legislature in the absence of constitu-
  tional inhibition may prescribe what shall constitute *prima facie*
  evidence of guilt and shift to the defendant the burden of proving
  that his action under investigation was lawful.

Same.
  5. Under the above rule (par. 4), *held* that the provision of Chap-
  ter 202, Laws of 1921, placing upon defendant charged with the
  unlawful possession of narcotics the burden of proving that his
  possession thereof came within one of the exceptions enumerated
  in the Act and was therefore lawful, did not deprive him of any
  constitutional guaranty and that an instruction in keeping with the
  statutory provision was properly given, the evidence clearly showing
  unlawful possession.

Same—Evidence Admissible.
  6. Proof that the defendant had contracted to sell and deliver
  morphine for money paid to him was evidence of the fact that he
  unlawfully possessed such drug, and the bill which had been given
  him by the state's witness in payment found upon his person was
  properly admitted in evidence.

[69 Mont. 18.]

Same—Punishment—Prejudicial Error.

    7.  Under Chapter 202, Laws of 1921, the jury may fix the punishment by their verdict by a fine not exceeding $1,000 or "by imprisonment for not more than three years, or by both such fine and imprisonment." The court instructed the jury that in case they found defendant guilty they must assess a fine of not less than $500 nor more than $3,000 and imprisonment in the state prison for not less than one nor more than five years. *Held,* prejudicially erroneous.

Same—Imprisonment—Place not Fixed by Statute—Confinement in County Jail.

    8.  Where the punishment for an offense is fixed by law (as in Chapter 202, *supra*) at imprisonment without stating the place of confinement, the place of imprisonment is the county jail and not the state prison.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

HENRY MARK was convicted of unlawful possession of morphine and cocaine and appeals. Reversed and remanded.

*Mr. Henry C. Levinski,* for Appellant, submitted a brief, and one in reply to that of Respondent, and argued the cause orally.

The title of Chapter 202, Laws of 1921, is fatally defective (see *State* v. *Brown,* 29 Mont. 179, 74 Pac. 366; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100; *Miller* v. *Jones,* 80 Ala. 89; *In re Hauck,* 38 N. W. 269; *McPherson* v. *State,* 174 Ind. 60, 90 N. E. 610; *Whitman* v. *State,* 80 Md. 410, 31 Atl. 325; *Crabb* v. *State,* 88 Ga. 584, 15 S. E. 455; *Yahn* v. *Merritt,* 117 Ala. 485, 23 South. 71, as is also the title of Chapter 36, Laws of 1923; *Burnett* v. *Turner,* 87 Tenn. 124, 10 S. W. 194, 195; *Shelton* v. *State,* 96 Tenn. 521, 32 S. W. 967; *Memphis St. Ry. Co.* v. *State,* 110 Tenn. 598, 75 S. W. 730; *Hearn* v. *Louttit,* 42 Or. 572, 72 Pac. 132; *Gunter* v. *Texas Land & M. Co.,* 82 Tex. 496, 17 S. W. 840; *State* v. *Looker,* 54 Kan. 227, 38 Pac. 288). The defective title cannot be recast to render it valid. (*State* v. *Bankers' etc. Assn.,* 23 Kan. 499); nor can the body of the Act be used as a support for such defective title, nor can the body be inducted into the title to make the latter valid. (*Erickson* v. *Cass County,* 11 N. D. 494, 92 N. W. 841.)

The question of legislation failing to respond to titles has often been the subject of decision by this court, and uniformly the defective enactments have been held void. In point, controlling, see *Russell* v. *Chicago, B. & Q. Ry. Co.*, 37 Mont. 1, 94 Pac. 488, 501; *State* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204; *State* v. *Hopkins*, 54 Mont. 52, Ann. Cas. 1918D, 956, 166 Pac. 304; *Western Ranches Co.* v. *Custer County*, 28 Mont. 278, 72 Pac. 659; *State* v. *Cunningham*, 35 Mont. 547, 90 Pac. 755; *Yegen* v. *Board of County Commrs.*, 34 Mont. 79, 85 Pac. 740.

The court erred in admitting proof that the state's witness, Guerra, had given a $20 bill to one Morgan with which to purchase narcotics from defendant. Its admission was wholly unjustified upon any theory, and constitutes reversible error. (Sec. 195, 8 R. C. L.; sec. 1133, 16 C. J., p. 587; *Allen* v. *State*, 10 Okl. Cr. 55, 134 Pac. 91.)

*Mr. Wellington D. Rankin,* Attorney General, for the State, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

Sufficiency of the title to Chapter 202, Laws of 1921: We have examined these cases cited by appellant and find that not a single one involved a title similar to the one here being considered. All of the cases cited involve titles which used the language: "to regulate," "to restrain" or "to control," and not one of them contains any other language from which an intent to prohibit could reasonably be inferred.

Furthermore, the fact should not be overlooked that Chapter 202, Laws of 1921, was incorporated in the Revised Codes of Montana of 1921 as sections 3189 to 3202 thereof. The inclusion of the above Act in a permanent codification of the laws of the state and the adoption of our Codes by the legislature cured any defect in the title of the Act in question. The rule is thus stated in 1 Lewis' Sutherland on Statutory Construction, section 171, as follows: "Where an Act is void because not within the title and such Act is afterwards incorporated

in a Code or revision, and the Code or revision is duly passed under an appropriate general title, such Act, section or provision will be valid from the passage of the Code or revision.'' (Citing *Parks* v. *State,* 110 Ga. 760, 36 S. E. 73; *Daniel* v. *State,* 114 Ga. 553, 40 S. E. 707; *Newgass* v. *Atlantic & D. Ry. Co.,* 56 Fed. 676.)

Was the amendment of Chapter 36, Laws of 1923, valid? The title to the Chapter might properly be described as a model of its kind, but of a poor kind. However, we think it sufficiently appears therefrom what the legislature intended to amend, and that is the rule which should be applied in determining the sufficiency of the title. Sutherland states the rule thus: ''If the reference to the Act to be amended in the title and body of the amendatory Act is sufficient for identification, it is all that is required and slight errors will be disregarded.'' (Vol. 1, sec. 231; *Harper* v. *State,* 109 Ala. 28, 19 South. 857; *Fenton* v. *Yule,* 27 Neb. 758, 43 N. W. 1140; *State* v. *Cross,* 44 W. Va. 315, 29 S. E. 527; *State* v. *Woolard,* 119 N. C. 779, 25 S. E. 719.)

Was the admission of the evidence relative to the $20 bill and the attempted purchase of drugs from the defendant error? The attempted purchase and sale of narcotics was so intimately and necessarily connected with the subject of defendant's illegal possession of narcotics as to be properly admissible as part of the *res gestae.* Proof that the defendant was attempting to sell and had, in fact, consummated a sale of narcotic drugs was certainly competent evidence, when taken with the other testimony relative to his attempted delivery of the drugs, to prove possession and for that purpose the evidence in question was admissible.

MR. JUSTICE GALEN delivered the opinion of the court.

By information filed in the district court of Silver Bow county, the defendant was charged with unlawfully possessing morphine and cocaine. The defendant entered a plea of not guilty, and the case was tried to a jury, which returned a

verdict of guilty, fixing punishment at imprisonment in the state's prison for not less than one nor more than two years, and a fine of $500. A motion in arrest of judgment was made and by the court denied, and judgment thereupon duly entered on the verdict. The appeal is from the judgment and from an order overruling defendant's motion for a new trial.

Several errors are specified as grounds of reversal, presenting five questions necessary to be decided in disposing of this appeal, *viz.:* (1) Is the subject of Chapter 202, Laws of 1921 (secs. 3189 to 3202, inclusive, Rev. Codes 1921), sufficiently expressed in its title? (2) Is the attempted amendment thereof by Chapter 36, Laws of 1923, valid? (3) Is that portion of section 12 of Chapter 202, Laws of 1921 (sec. 3200, Rev. Codes 1921), which makes the possession or control of drugs presumptive evidence of violation of the law, unconstitutional? (4) Was the admission of evidence of attempts to purchase narcotics from the defendant reversible error? (5) Is the judgment contrary to the law?

1. The title of Chapter 202, Laws of 1921, reads: "An **[1, 2]** Act to regulate the production, manufacture, sale, barter, exchange, distribution, dealing in, giving away, dispensing, or the disposing in any manner of opium or coca leaves, their salts, derivatives or preparations; to define drug addiction; to provide for the reporting of drug addicts, to regulate the treatment and to provide for the committal of the habitual users of such drugs; to provide for the revocation of license of habitual users; to provide that under certain conditions the possession of said drugs shall be unlawful, to provide for the enforcement thereof; making an appropriation for carrying out of the provisions of this Act; providing penalties for its violation, and repealing all Acts in conflict herewith."

The defendant contends that the title does not clearly express the purpose of the Act to prohibit the possession of the objectionable drugs, contrary to the provisions of section 23, Article V, of the Constitution. In support of this argument

we are cited to several Montana cases, as well as cases from
other jurisdictions; but they are not in point as respects the
title of this Act. "But by this constitutional notice it is
only intended that the subject of the bill shall be fairly ex-
pressed in the title. It is not necessary—for the Constitution
has not so declared—that a title shall embody the exact
limitations or qualifications contained in the bill itself which
are germane to the purpose of the legislature, if the general
subject of the measure is clearly expressed in the title. Upon
the highest authority it is held that, under constitutional
provisions substantially like that referred to in Montana,
where the degree of particularity necessary to be expressed
in the title of a bill is not indicated by the Constitution
itself, the courts ought not to 'embarrass legislation by
technical interpretations based upon mere form or phrase-
ology.' " (*State* v. *Anaconda C. M. Co.*, 23 Mont. 498, 59
Pac. 854; see, also, *Yegen* v. *Board of County Commrs.*, 34
Mont. 79, 85 Pac. 740; *Evers* v. *Hudson*, 36 Mont. 135, 92
Pac. 462.)

The unity of title required by this constitutional provision is
served notwithstanding many provisions in an Act, where they
are germane to the general subject expressed. (*Hotchkiss* v.
*Marion*, 12 Mont. 218, 29 Pac. 821; *State* v. *McKinney*, 29
Mont, 375, 1 Ann. Cas. 579, 74 Pac. 1095; *In re Terrett*, 34
Mont. 325, 86 Pac. 266.) The legislature is the judge, to a
great extent at least, of the title which it will prefix to a bill;
and the court has no right to hold a title void because, in its
opinion, a better one might have been used. (*State* v. *McKin-
ney, supra;* sec. 88, Sutherland on Statutory Construction.)
Speaking of such constitutional limitation, Judge Cooley says:
"The general purpose of these provisions is accomplished
when a law has but one general object, which is fairly indi-
cated by its title. To require every end and means necessary
or convenient for the accomplishment of this general object to
be provided for by a separate act, relating to that alone, would
not only be unreasonable, but would actually render legisla-

tion impossible." (Cooley's Constitutional Limitations, 6th ed., 172.)

The title of the Act before us clearly indicates that it is one to regulate and prohibit the use of "opium or coca leaves, their salts or derivatives or preparations." Morphine is produced from opium, and cocaine from coca leaves; so that it is clear from the title that these drugs are to be regulated and the possession thereof made unlawful under certain conditions. No one can interpret the title otherwise than that the Act is primarily intended to prevent drug addiction, and to regulate and prohibit the sale and dispensing of such drugs. The words "to regulate" are used in the title, and then it is plainly further stated therein that the Act is to provide "that under certain conditions the possession of said drugs shall be unlawful." This last quoted phrase indicates prohibitive provisions, and leaves the defendant's argument and authorities cited wholly without application. We hold the intent to prohibit the use of such drugs under certain conditions sufficiently expressed in the title of the Act.

2. The attempted amendment of Chapter 202, Laws of [3] 1921, by Chapter 36, Laws of 1923, is in our opinion a nullity and should be wholly disregarded. We hold it void for failure of its title to clearly express its subject, contrary to section 23 of Article V of our Constitution. The title is meaningless. It reads: "An Act to amend section 3202 of Chapter 202 of the Revised Codes of 1921, providing a penalty." There is no way of determining from the title whether the purpose was to amend Chapter 202 of the Laws of 1921, or section 3202 of the Revised Codes of Montana of 1921. It is to provide "a penalty," but for what? Its title is silent and its reference to existing statutes so bungled as to leave uncertainty. The constitutional requirement is not satisfied unless the object of the legislation is clearly expressed in the title. (*State* v. *Mitchell,* 17 Mont 67, 42 Pac. 100; *Western Ranches* v. *Custer County,* 28 Mont 278, 72 Pac. 659; *State* v. *Brown,* 29 Mont. 179, 74 Pac. 366.)

3. Section 12 of Chapter 202, Laws of 1921, provides: [4, 5] "That it shall be unlawful for any person to have in his possession or under his control any of the drugs mentioned in this Act, if such possession or control is obtained in a manner contrary to the provisions of this Act." Then certain exceptions and exemptions are enumerated, and the burden of proof placed upon the accused to show that his possession of the prohibited drugs comes within the exemption of the statute. The defendant contends that his constitutional rights were invaded by the court in giving to the jury instruction No. 11, based upon this statute. The instruction reads as follows: "You are instructed that it is unlawful for any person to have in his possession or under his control any derivative, compound, manufacture or sale of opium known as morphine, if such possession or control was obtained in a manner contrary to the laws of Montana, and such possession or control is presumptive evidence in and of itself of a violation of the laws of Montana."

Proof that the prohibited drugs were found in the defendant's possession, by the statute is not made presumptive of any evidence of guilt. But in cases of possession of such drugs "obtained in a manner contrary to the provisions of this Act," the burden of proof of lawful possession is placed upon the defendant. It was shown that the witness Morgan but a few minutes before had contracted with the defendant for the purchase of morphine, had paid $15 therefor, and that the defendant agreed to deliver it through a hole in the fence. It satisfactorily appears that the morphine found in the defendant's possession at the time of his arrest was that which he was about to deliver to Morgan. Clearly, such evidence was proper as part of the *res gestae.* The proof clearly showed the defendant to have been in possession of drugs contrary to the law, and it was not depriving him of any constitutional guaranty to advise the jury pursuant to the statute that possession of such drugs unlawfully is presumptive evidence of a violation of the law.

Professor Wigmore, in his work on Evidence, says: "There can be no vested right in a rule of evidence. Those rules are merely methods for ascertaining facts." (Vol. 1, sec. 7.) It is a well-settled rule that the legislature may prescribe that which shall constitute *prima facie* evidence of guilt, and shift to the defendant the necessity of satisfactory explanation in the absence of express constitutional inhibition. (*State* v. *Lewis,* 67 Mont. 447, 216 Pac. 337.) The accused has no vested right in any presumption or rule of evidence. Within constitutional limits the legislature may change the rule at any time. The instruction given was warranted by the statute, and thereby defendant's constitutional rights were not invaded.

4. Proof of the attempt to purchase narcotics from the **[6]** defendant immediately preceding his arrest for the unlawful possession of such drugs was proper in our opinion. It was clearly a part of the *res gestae.* The proof shows that the state's witness, Guerra, a few minutes before the defendant's arrest, had given John Morgan a $20 bill with which to make purchase from the defendant of morphine and cocaine, and that upon the arrest of the defendant the identical bill was found in his possession. Morgan testified he had given the bill to the defendant in purchase of narcotics a few minutes before. He testified: "I was ordering some narcotics from him [the defendant] and gave him the money and walked out and was going to receive the stuff. * * * I * * * gave him [the defendant] the $20 bill which I got from Mr. Duggan and Mr. Guerra, and in change got from the defendant $5 in silver. There is a kind of a board fence in the back of the terrace which has got probably two inch holes, and I was supposed to receive the narcotics through there, but did not receive it, because Mr. Duggan came up before I could receive it." The $20 bill was properly received in evidence in support of the charge against the defendant. Proof that the defendant had contracted to sell and deliver morphine for money paid to him was evidence of the fact that defendant unlawfully possessed such drugs.

The rule is well stated by Bishop on Criminal Procedure, and approved by Professor Jones, in his work on Evidence, as follows: "It is, that though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; and it is also admissible, if it really tends thus, as in the facts of most cases it does not, to prove the act itself." (1 Jones on Evidence, p. 724, sec. 143.)

5. The judgment is in our opinion contrary to the law. The [7] jury was instructed by the court: "If you find the defendant guilty of the crime with which he is charged, then you may fix his punishment by a fine of not less than $500 nor more than $3,000 and at imprisonment in the state prison for not less than one year nor more than five years." It was instructed further that it could fix the defendant's punishment, "as explained in these instructions," or leave it to be fixed by the court. The verdict fixed the defendant's punishment "at imprisonment in the state prison," and the judgment decreed that he "be confined in the state prison at Deer Lodge." The jury had the right to fix the punishment by their verdict (sec. 12027 Rev. Codes 1921), but should have had clearly pointed out the minimum and maximum punishment for the offense. Under the statute (Chap. 202, Laws of 1921) the jury were at liberty to fix defendant's punishment by a fine in any amount *not exceeding* $1,000 "or by imprisonment for *not more* than three years, or by both such fine and imprisonment." (Chap. 202, *supra.*) But it was by the court instructed that in the event the defendant was found guilty, the jury, if it elected to fix the punishment in the verdict, must assess a fine of not less than $500 nor more than $3,000 *and* imprisonment in the state prison for not less than one nor more than five years. Under the law

the jury were at liberty to assess a fine anywhere from $1 to $1,000, or by imprisonment from one day to three years, either fine, or imprisonment, or both. "Instructions, whether right or wrong, when given, become, for the time being, the law of the case, binding upon the jury, the court and counsel." (14 R. C. L. 822.) We think the giving of such instruction erroneously stating the law as to the maximum and minimum punishment which the jury were at liberty to assess was highly prejudicial to the rights of the defendant. The jury, if properly instructed, might have been satisfied to impose merely a fine from $1 to $1,000 upon the defendant; but it was directed that, if it fixed the punishment on determination of the defendant's guilt, then it must assess a fine of *not less* than $500 *and* imprisonment in the state prison for not less than one nor more than five years. The defendant had a right to have the jury fix his punishment, and to do so they should be properly instructed in regard thereto.

Both the verdict and judgment are erroneous, as the offense [8] is punishable under the Act of 1921 as a misdemeanor, imprisonment to be in the county jail of the county. (*State* v. *Toy,* 65 Mont. 230, 211 Pac. 303.) He was committed to the state prison at Deer Lodge and is now serving his sentence there pursuant to the judgment.

The judgment and order are reversed and the cause is remanded to the district court of Silver Bow county, with directions to grant the defendant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.