### D. H. BARR et al. v. STATE.

No. A-4996.    Opinion Filed Dec. 15, 1924.

(231 Pac. 322.)

(Syllabus.)

1.    **Evidence—Judicial Notice—Nature of Morphine Sulphate.** The court will take judicial notice that morphine sulphate is a narcotic drug within the definition of that term as contained in

section 8886, Compiled Statutes 1921 and that an ordinary dose of this substance is from one-twelfth to one-half of a grain.

2. **Poisons—Possession of Narcotics—Insufficient Evidence Against One Defendant.** The evidence examined and found sufficient as to one of the defendants, but insufficient as to the other.

Appeal from District Court, Kay County; Claude Duval, Judge.

D. H. Barr and J. Howard were convicted of the illegal possession of narcotic drugs, and they appeal. Reversed as to Barr, and modified and affirmed as to Howard.

C. R. Reeves, for plaintiff in error D. H. Barr.

E. J. Giddings, for plaintiff in error J. Howard.

The Attorney General, for the State.

BESSEY, J. On the 19th day of September, 1923, these plaintiffs in error, defendants in the trial court, were by separate verdicts of a jury found guilty of the unlawful possession of narcotic drugs. Defendant Howard's punishment was fixed at confinement in the state penitentiary for a term of seven years and to pay a fine of $500; defendant Barr's punishment was assessed at confinement in the penitentiary for a term of seven years and to pay a fine of $1,000. From separate judgments rendered on these verdicts defendants filed separate appeals in this court; upon stipulation of parties and by order of this court the two appeals are here consolidated.

The evidence shows that defendant Barr and one John Roberts had, before the time of the alleged offense, been staying in a rooming house at Webb City, in Osage county; that on June 22, 1923, these two drove together to Blackwell, in the adjoining county of Kay; that Roberts had with him a black hand bag; and that upon their arrival at Blackwell defendant Barr went to the Modern Rooms and engaged a room

for the two of them. Barr left the rooming house and went to a restaurant and other places in Blackwell and, meeting Roberts, informed him of the location of the room. Roberts then took his hand bag to the room and went out to find some persons to engage in a game of poker in this room. At this time, or shortly prior thereto, he met defendant Howard, whom he had known slightly in the harvest fields in Kansas. Roberts told Howard to go to this room and that he would get others to join them there in a game. Accordingly, Howard went to the room and found Barr there alone, lying across the bed. It seems that Howard and Barr had never met before.

After waiting awhile, Howard also lay down on the bed. In a short time a policeman knocked on the door and was invited in. Two other officers entered with this policeman. The policeman who entered first said that Howard had a little box in his hand and that he hurriedly placed it at the edge of the mattress opposite the officer, in an effort to conceal it. The other officers did not profess to have seen this box in the hand of Howard but did see the first officer go around to the opposite side of the bed where he recovered the box. This box was found to contain two five-grain cubes of morphine sulphate.

One of the officers then examined the contents of Roberts' hand bag and found therein, among other things, a small pasteboard box containing 290 grains of morphine sulphate in crystalline form. Unknown to these defendants, Roberts had been previously arrested and searched, and the officers had taken from his person a hypodermic syringe and some needles. At the time of the arrest of these defendants, no questions were asked by the officers and no statements or explanations were made by either defendant.

At the trial both defendants claimed that they did not know that Roberts used or distributed narcotic drugs, and claimed that they knew nothing about the contents of the hand bag. Howard denied having had in his possession the box containing the two morphine cubes. There was no evidence showing that Barr ever had physical possession of either of the boxes in which morphine was found. Barr was a miller by trade and claims that he had started out going from town to town where there were mills, to search for employment. Howard was an oil field worker and engaged in any kind of employment he could procure. There was no showing that either of the defendants was a narcotic drug addict, and no showing that either of them had ever before been convicted of crime.

These defendants are represented here by different counsel, and each claims that the judgment as to him should be reversed:

First. Because the information is insufficient.

Second. Because the evidence is insufficient to support the verdict.

The information states that—

"D. H. Barr and J. Howard, then and there being, did then and there unlawfully and feloniously have in their possession and under their control, more than one dose of narcotic drugs, to wit, 350 grains of morphine sulphate, the same being a salt of morphine, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state."

Defendants contend that the information is insufficient because it does not state that morphine sulphate is a narcotic drug, as defined by section 8886, Comp. Stat. 1921. This claim

is without merit. This court will take judicial notice that morphine sulphate is a narcotic drug, within the meaning of that statute.

Judicial notice will be taken of scientific facts which are universally known, or which may be found in standard dictionaries, encyclopedias, and the United States pharmacopoeia. 15 R. C. L. 1127, with long list of cases cited. The United States pharmacopoeia, a standard publication used by pharmacists and physicians, indicates that morphine sulphate is a narcotic drug and that the dose varies from one-twelfth to one half of a grain.

An analysis of the testimony leads us to the conclusion that the testimony is insufficient to support the verdict against defendant Barr. There is no showing that Barr was a drug addict; no showing that he had possession of any of the drugs found. He may have been implicated with Roberts in the possession or distribution of the drugs seized, or he may have been an innocent man in bad company. The verdict as to him is predicated upon suspicion only.

As to defendant Howard, there is the testimony of one officer to the effect that he saw Howard with the little box containing the two cubes of morphine sulphate, and that as he entered the door Howard placed this box at the edge of the mattress; and two other officers saw this officer go directly to the spot and find the box. Although the evidence indicates that Barr and Howard had no previous acquaintance with each other and that the acquaintance of Howard with Roberts was of only a casual nature, there is this evidence indicating that Howard had something to do with the possession of this drug. The weight of the evidence was therefore for the jury, and this court, under the circumstances, would not be justified in setting aside the verdict as to him.

But in view of the fact that Howard was a young man of industrious habits and presumably of good character, who had never before been convicted on a charge of this or any other character, it would seem that the maximum penalty imposed was excessive. The judgment as to Howard will therefore be modified to the payment of a fine of $500 and imprisonment in the penitentiary for a term of three years.

The judgment as to Howard, as so modified, is affirmed.

The judgment as to Barr is reversed.

MATSON, P. J., and DOYLE, J., concur.