STATE, APPELLANT, v. WONG HIP CHUNG, RESPONDENT.

(No. 5,790.)

(Submitted October 24, 1925. Decided November 20, 1925.)

[241 Pac. 620.]

*Narcotics—Illegal Possession—Decoys and Detectives—Entrapment of Defendant—What Does not Constitute.*

Criminal Law—Decoys—Employment Unobjectionable, When.
   1.  It is not a defense to prosecution for crime (illegal possession of opium) that a decoy furnished an opportunity for its commission, provided the decoy did not lure the defendant, who would not otherwise have been likely to break the law, into committing the act for which he was on trial.

Same—Narcotics—Entrapment of Defendant by Decoys—Evidence—Insufficiency.
   2.  Evidence in a prosecution for unlawfully possessing narcotics reviewed, and *held* to show that there was not any entrapment of the defendant into committing the offense by a decoy who had reasonable ground to suspect that defendant was engaged in making unlawful sales of opium and who did no more than make an offer to buy and furnished the money fixed as the price by defendant with which to procure it; *held* further, that the trial court erred in directing a verdict in favor of defendant on the ground that there was not sufficient evidence to warrant the submission of the case to the jury.

Criminal Law, 16 C. J., sec. 57, p. 88, n. 44, 45; p. 89, n. 44, 48, 51. Poisons, 31 Cyc., p. 899, n. 27.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

WONG HIP CHUNG, *alias* Sam Kee, was prosecuted for feloniously possessing narcotics. From a judgment of dismissal, the state appeals. Reversed, with directions to grant the state a new trial.

Cause submitted on brief of Counsel for the State.

1.   Inducement to commit crime with view to prosecution as defense to such prosecution, see notes in 17 Ann. Cas. 295; Ann. Cas. 1916C, 730; Ann. Cas. 1917D, 954. See, also, 8 R. C. L. 127.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the State.

The fact that a person is entrapped to commit crime with a view of prosecution therefor constitutes no defense. (Note 18 A. L. R. 146, citing *Niswonger* v. *State,* 179 Ind. 653, 46 L. R. A. (n. s.) 1, 102 N. E. 135; *Hyde* v. *State,* 131 Tenn. 208, 174 S. W. 1127; *Fiunkin* v. *United States,* 265 Fed. 1; *State* v. *O'Brien,* 35 Mont. 483, 10 Ann. Cas. 1006, 90 Pac. 514.)

There was sufficient evidence to have taken this case to the jury on the question of the possession of opium. (*People* v. *Herbert,* 59 Cal. App. 158, 210 Pac. 276; *Barr* v. *State* (Okl. Cr. App.), 231 Pac. 322; *People* v. *Fong Wot,* 63 Cal. App. 677, 219 Pac. 481; *State* v. *Mark,* 69 Mont. 18, 220 Pac. 94; *State* v. *Chin Gim,* 47 Nev. 431, 224 Pac. 798.) Nor does the fact that the evidence in this case might be held to indicate only a temporary possession of the opium by the defendant justify the ruling of the trial court. (*Sparks* v. *State,* 19 Ala. App. 118, 95 South. 558; *Harness* v. *State,* 130 Miss. 673, 95 South. 64; *State* v. *Willey,* 7 Del. (Boyce) 441, 108 Atl. 79.)

Proof that the defendant in this case received money from the federal officer, accompanied by a request to procure opium for the latter and thereafter went off and returned and delivered the opium to the officer, casts on the accused the burden of showing where, how and from whom he got the opium. (Dabney on Liquor Prohibition, p. 343, citing *Grant* v. *State,* 87 Ga. 265, 13 S. E. 554; *Mack* v. *State,* 116 Ga. 546, 94 Am. St. Rep. 137, 59 L. R. A. 602, 42 S. E. 766.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Wong Hip Chung, being on trial for feloniously possessing narcotics, was acquitted by direction of the court. Judgment of dismissal followed from which the state has appealed.

The defendant's motion upon which the court directed his acquittal was based upon three grounds: (1) The information

does not state a public offense; (2) the officers entrapped the defendant into committing the crime; and (3) the defendant was not in such possession of the narcotics as the law characterizes as criminal. The trial court seems to have deemed the information sufficient, and in this we think it was correct. (Sec. 3202, Rev. Codes 1921, as amended by Chapter 38, 1925 Sess. Laws, p. 39; *State* v. *Finley,* 72 Mont. 42, 231 Pac. 391.)

Points (2) and (3) may be discussed under one head. In the argument which is a part of the motion, defendant's counsel asserted that "the evidence on behalf of the state shows positively that at no time did this defendant seek either of the officers who testified in reference to the alleged offense for the purpose of selling or disposing of any narcotics to them," nor does the evidence show that he had any narcotics in his possession or under his control; the evidence shows that one of the officers sought and importuned the defendant on several occasions to procure narcotics and gave him money for the purpose of committing a crime, "and the other government official, charged similarly with the duty of preventing the commission of a crime, deliberately entrapped this defendant and connived and conspired with the other government official to have the offense committed, and for that purpose gave to this defendant money." There is more of the same tenor.

In passing upon the motion the court properly denied defendant's contention that the officers had entered into conspiracy to bring about the commission of an offense. The court was of the opinion that the officers had acted in entire good faith; "the only question here," said the court, "is whether in their efforts they have produced sufficient evidence to constitute an offense by the defendant in the particular case."

The general rules respecting entrapment are more easily de-
[1] fined than applied. Generally speaking, in cases where the violation of individual rights in respect of person or property is not involved, "a person who commits a crime at the suggestion or instigation of another is just as guilty as if the design

had originated with him, and it is not material in this respect that the suggestion was made by a police officer.'' (8 R. C. L. 127.) ''In general, one who has committed a criminal act is not entitled to be shielded from its consequence merely because he was induced to. do so by another.'' (*Commonwealth* v. *Wasson,* 42 Pa. Super. Ct. 38.)

Ordinarily it does not avail the perpetrator of a crime as a defense that facilities for its commission were purposely placed in his way or that the criminal act was done at the ''decoy solicitation'' of persons seeking to expose the criminal. (16 C. J. 88.) ''It is well settled,'' said the circuit court of appeals in *Newman* v. *United States,* 299 Fed. 128, ''that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecuting therefor.'' (And see *Peterson* v. *United States,* 255 Fed. 433, 166 C. C. A. 509; *United States* v. *Echols* (D. C.), 253 Fed. 862.)

It is no defense that a person, acting as a decoy, furnished an opportunity for the commission of the offense. (Note to *Butts* v. *United States,* 18 A. L. R. 147, citing, among others, *State* v. *O'Brien,* 35 Mont. 482, 10 Ann. Cas. 1006, 90 Pac. 514.) In the *O'Brien Case* it appeared that the county attorney had furnished the money with which purchases of liquor were made from the defendant by the state's witnesses, and it was argued that, since the prosecuting officer had himself thus induced the violation of the law, a conviction could not be had, but this court said: ''Such evidence is always competent (*In re Wellcome,* 23 Mont. 450, 59 Pac. 445), and it is no defense to a prosecution of this kind that the purchase was made by

a spotter, a detective, or hired informer. (12 Cyc. 447; 23 Cyc. 184.)'' (And see *Koscak* v. *State*, 160 Wis. 255, 152 N. W. 181; *Simmons* v. *People*, 70 Colo. 262, 199 Pac. 416; *Commonwealth* v. *Wasson*, *supra; Hyde* v. *State*, 131 Tenn. 208, 174 S. W. 1127; *Ramsey* v. *United States* (C. C. A.), 268 Fed. 825.)

In this class of offenses, which are usually committed secretly and craftily, it is difficult, if not almost impossible, to secure the evidence necessary to a conviction by any other means than by the use of decoys; and certainly there can be no objection to their use if the officers do not ''by persuasion, deceitful representation or inducement'' lure a person who otherwise would not be likely to break the law into the commission of a criminal act.

The rules applicable to prosecutions for infractions of the liquor laws apply to cases of this character; and the great weight of authority supports the view that a person making an unlawful sale of liquor is not excused from criminality by the fact that the sale is induced for the sole purpose of prosecuting the seller. This is the language of the note in 18 A. L. R., referred to above, at page 162, following which is a long list of supporting cases.

In *Goldstein* v. *United States*, 256 Fed. 813, 168 C. C. A. 159, it was held that the fact that military police purchased liquor to procure evidence did not estop the government from prosecuting the seller, where no deception was practiced upon him, though the soldiers claimed to want the liquor for sickness. ''Defendant knew he was violating the statute—knew the parties to whom the liquor was sold were soldiers.''

The facts in the case before us, in so far as they are ma-
[2]  terial to the instant inquiry, are: Fred Shuster, acting under the direction of federal narcotic agents, came from Butte to Helena on March 10, 1924, for the purpose, as he expressed it, of catching persons who were selling opium. This Shuster had especially in mind as a prospective victim of

[74 Mont. 523.]

his detective wiles a friend with whom in the past he had joined in the gross pleasure of smoking the inspissated juice of the poppy, and which the friend was reputed to be selling. Shuster sought out this friend whom he referred to usually as Danny, and asked him for opium; Danny said he had none as he had quit smoking, but, said Shuster, "he knew a Chinaman who would deliver me some, and then the Chinaman came in." Danny said: "Maybe this boy can accommodate you." The Chinaman referred to was the defendant. Danny introduced Shuster to the defendant, telling defendant, according to Shuster, "if he could sell me any opium I was a safe man to sell to." Shuster asked defendant to get him some opium, and defendant said he would see what he could do, asking when Shuster wanted it, to which the latter answered: "To-morrow." Shuster asked defendant to get him a dollar's worth, "and he said he could not; he said $2 was the least he could take or buy." On this occasion defendant asked if Shuster could get him some snow (cocaine hydro-chloride); Shuster said he did not have any; this last statement Shuster repudiated on cross-examination. Shuster next saw defendant on the following evening upon Main Street, at which time the defendant told Shuster "not to come to the laundry where he was working; that he didn't want those people to get next to what he was doing."

On cross-examination Shuster testified: "I asked him, 'Can you get me some mud?' He said, 'Yes, can get you some mud; how much do you want?' I said, 'A dollar card'; he said, 'I don't sell dollar card; it is $2.' I said, 'All right, you go and get two dollar card; I want some of it to-night.' That was on the afternoon of the 11th, and the reason why I did not get it right then and there is because he could not get it until night—the boys didn't get up; that is the words he used. No, he didn't tell me what boys; he said he would get it for me that night, and he fixed the hour at 7:30; I was to meet him at 7:30."

At the time and place appointed Shuster met the defendant to whom he gave $2. The conversation at that time as related by Shuster was: "I said, 'Can you get me some opium?' He said, 'I can.' I said, 'Here is $2'; and he said, 'I go get it.'" At this time defendant asked for cocaine, calling it coke. Shuster said he had no coke. In a short time defendant returned with a card containing opium, which he delivered to Shuster who placed his initials thereon and delivered it to one Hildebrand, who was a witness to the transaction. Hildebrand, a federal narcotic agent, testified that he saw Shuster give defendant some money and the defendant said, "I be back in ten minutes—I bring you stuff in ten minutes," and that a little later he saw defendant pass the card of opium to Shuster, which Shuster gave to the witness. Hildebrand also testified: "The Chinaman handed him the card of mud, and he said, 'Have you got some snow?' Fred says, 'No,' He says, 'Well; when are you going to get the snow for me?' The Chinaman said that to him, and Fred said he didn't have any; he didn't know where he could get any."

On the afternoon of the 13th Shuster again negotiated with defendant for the purchase of opium, which on this occasion was referred to as mud. Shuster said: "I asked him if he would get me some more mud, and he said he would if I would get him some snow. I told him I could not get any more snow; I could not get any. I told him I would like to have some more mud, and he told me to wait until night, and I waited." About dark that night Shuster gave the defendant $2 and the defendant delivered opium. The witness Hildebrand and another federal narcotic agent, Lawrenson, were near by. The defendant talked about wanting snow before he started for the opium and after his return with it.

Hildebrand corroborated Shuster as to the transaction on the 13th; he said he saw Shuster hand the defendant some money and approximately ten minutes later saw defendant hand Shuster a card of opium. On the night the defendant

was arrested Hildebrand searched him and found some keys in his pockets. The defendant told Hildebrand he "had a room right in the building next to the police station"; the witness went there and searched the building. The keys fitted the lock of one room only and in the room was found an opium-smoking pipe and a cooking lamp. The bowl of the pipe contained a residue from smoking which is known as yen shee, which "contains a good percentage of morphine, which is a narcotic."

Upon the facts disclosed it seems clear that there was not any entrapment of the defendant; and that he had possession of the narcotics with the purpose of violating the law seems beyond question. (*State* v. *Mark*, 69 Mont. 18, 220 Pac. 94; *People* v. *Herbert*, 59 Cal. App. 158, 210 Pac. 276; *People* v. *Fong Wot*, 63 Cal. App. 677, 219 Pac. 481; *Barr* v. *State* (Okl. Cr. App.), 231 Pac. 322.) The evidence was of such a character as to warrant the jury, if it saw fit to do so, in concluding that the defendant was an opium peddler. The mere fact that it was not shown affirmatively that he had actually made sales before did not compel the inference that he had not done so. He had been introduced to Shuster by Danny as one likely to supply his wants.

The evidence offered on part of the state confirms the opinion of the learned trial judge that the officers were acting in good faith. It also tended to prove that the officers suspected and had reasonable ground to suspect that the defendant was engaged in unlawful sales of opium and it seems obvious that the officers made no mistake in arriving at that conclusion. (*Billingsley* v. *United States* (C. C. A.), 274 Fed. 86.) The officers had nothing to do with defendant's willingness to sell the opium for a consideration. Shuster did not offer the defendant any inducement to sell except that he offered to buy and gave the defendant the amount of money which defendant fixed as the price he was willing to take. Note that before the receipt of any money from Shuster the defendant had fixed the price

at which he was willing to sell the opium. It is true that the defendant was decoyed by what was done to sell opium to Shuster and to put himself into a position where he yielded up evidence of the commission of the offense. But this does not signify that Shuster lured him, or incited or induced him, to do otherwise than he would have done if any other person in whom he had confidence had applied to him to purchase the drug. (*Fiunkin* v. *United States* (C. C. A.), 265 Fed. 1.)

The facts and circumstances surrounding the transaction in the present instance were sufficient to justify a jury in believing that the defendant at all times was ready, able and willing to sell opium upon receiving his price. (*People* v. *Barkdoll,* 36 Cal. App. 25, 171 Pac. 440.) The cause should have been submitted to the jury for its consideration.

The judgment is reversed and the district court of Lewis and Clark county is directed to grant the state a new ·trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.