PEOPLE *v.* McINTYRE.

1. INTOXICATING LIQUORS—CRIMINAL LAW—ADMISSIONS.
   In a prosecution for violation of the liquor law, where
   defendant admitted that he sold a quart of whisky, the
   trial court was justified in instructing the jury that it
   was their duty to convict him.

2. SAME—INDUCEMENT TO COMMIT CRIME—NATURE OF INDUCEMENT.
   The acts of the officers of the law in gaining the confidence
   of defendant and inducing him to sell them the liquor
   did not constitute an unlawful inducement, justifying his
   acquittal, since it is only when the criminality of the
   act is shown to be absent by the fact of the inducement
   that such proof justifies acquittal.

Exceptions before judgment from Jackson; Parkinson (James A.), J. Submitted April 14, 1922. (Docket No. 128.) Decided June 5, 1922.

William McIntyre was convicted of violating the liquor law. Affirmed.

*John F. Henigan,* for appellant.

*M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The first count in the information filed against defendant charged him with unlawfully selling one quart of whisky to William L. Waltman at the township of Grass Lake in the county of Jackson on June 24, 1921. Two other counts were added, but withdrawn, and need not be considered. He seeks review of his conviction on exceptions before sentence.

From the testimony it appears that certain officers,

having suspicion that defendant was violating the pro-
hibition law, went to the summer hotel conducted by
him on Mack Island and registered as guests.    Mr.
Bresler was a Federal agent.    Waltman was connected
with the food and drug department of the State.
They were accompanied by relatives of Waltman.
They had provided themselves with several small
bottles of whisky.    They sought to gain defendant's
confidence by drinking in his presence and in the
presence of a man in his employ.    One of them in-
tentionally dropped a small bottle from his pocket on
the floor of the porch of the hotel on which they were
sitting.    The second day they were there Bresler testi-
fied he asked defendant for liquor and defendant ex-
pressed a willingness to sell him a quart for $17.
Bresler asked defendant to bring it to his room, to
which he and Waltman then went.    Defendant soon
after appeared with a bottle of old American whisky.
He was handed a $20 bill, went out and soon after re-
turned with the change.

The defendant was called as a witness in his own
behalf.    In his testimony, as set forth in narrative
form, appears the following:

"Bresler says to McIntyre 'Any chance of getting
any liquor around here?'    McIntyre kind of hesitated,
but thought they were pretty good fellows and said
'Well, I have got two or three bottles of pretty good
stuff.    I am not crazy about disposing of it, but if
you want to pay the price for it I will let you have
one of the bottles.'    Bresler asked him what the price
would be and he said $17, and Bresler says 'All right,
go and get it.'    McIntyre had two or three bottles in
his room and he went upstairs and got one of them
which was old American whisky; that he brought it
down in a newspaper and took it into the room where
Bresler and Waltman was; that Waltman was slightly
under the influence of liquor, that he swooned over on
the bed and fell back asleep like and that Bresler had
to kick him on the foot to kind of revive him; and
Bresler asked Waltman if he wanted to get in on

this.   He said yes, and Bresler gave McIntyre $20 and
McIntyre later gave him back the change.   But just
before this, McIntyre said to Bresler and Waltman:
'Now, this bottle shows evidence of being tampered
with, but it has not been; it hasn't been out of my
presence since I have had it some time, but it is prob-
ably too hot where I had it in my room.   Take a
drink of it and see if it is all right.   I would not want
you to pay for it, if you didn't think it was all right.'
That they each had a drink out of this bottle, that is,
the two officers did but was feeling kind of good; had
two or three drinks before that, referring to the
drinks out of other bottles before, so he took a drink
out of the bottle just to please them.   McIntyre was
asked why he furnished Bresler this quart of liquor
and his answer was 'I presume it was the way they
used me; they had plenty of liquor and gave me all
I wanted of it, and I was feeling pretty good.'   He
said he did not have the liquor there for sale; that
he told them so at the time and that was the reason
he put the price on it of $17, that is, that he did not
care to let it go; that they told him they would have
to leave, would have to break up there if they did not
get some more liquor.   *   *   *   He admitted that he
knew the price of whisky and that he was not so drunk
but what he knew that and that he knew enough
to make the change of the money and that he was
sane and conscious and knew it was a violation of the
law, except he says he did not know it in fact right
then, just what he was doing.   *   *   *   McIntyre
swore that he supposed he was violating the law when
he sold the whisky to Bresler and Waltman and knew
that it wasn't right, but he didn't know in fact right
then just what he was doing, that they found some
whisky in his hotel afterwards."

In view of this admission on the part of the defend-
ant, the trial court was fully justified in instructing
the jury that it was their duty to convict him.   They
retired and promptly did so.

Defendant's counsel urges that the testimony of the
people's witnesses should have been "stricken from the
case for the reason that officers have no right to decoy

with people or connive with people for the violation of the law." He calls attention to the decisions of this court in *Saunders* v. *People*, 38 Mich. 218; *People* v. *McCord*, 76 Mich. 200, and *People* v. *Pinkerton*, 79 Mich. 110. In those cases the court in no uncertain terms characterized the acts of officers in conniving with or persuading people to commit crimes and then prosecuting them therefor. The record in this case presents no such facts. It is true that the officers sought to gain the confidence of the defendant and to satisfy him that it would be all right to sell them the whisky, but their acts did not constitute an unlawful inducement. The rule is well stated in *People* v. *Liphardt*, 105 Mich. 80, 83:

"We know of no case that holds that one who has committed a criminal act should be acquitted because induced to do so by another. It is merely when the criminality of the act is shown to be absent by the fact of the inducement that such proof justifies acquittal."

See, also, *People* v. *Everts*, 112 Mich. 194, and cases cited; *People* v. *Lalonde*, 171 Mich. 286.

The exceptions are overruled. The trial court may proceed to judgment on the verdict.

FELLOWS, C. J., and MCDONALD, BIRD, MOORE, and STEERE, JJ., concurred.

WIEST and CLARK, JJ., concurred in the result.