STATE OF IOWA, Appellee, v. BERNARD HEERON, Appellant.

No. 39173.

JUNE 24, 1929.

REHEARING DENIED SEPTEMBER 30, 1929.

*Higbee & McEniry,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

GRIMM, J.—The defendant in this case, living at Creston,

made a trip to Chicago by rail, and, returning, he was arrested on the train, just as the train was pulling into the railroad yards at Creston. He was immediately searched, and  a package containing 356 grains of morphine, or approximately 1,500 doses, was found in his coat pocket. The defendant admitted that he had purchased the morphine in Chicago, and had it in his possession at the time he was arrested and searched, but he claimed that he had gotten it for a man named Stroup, at Stroup's request, and that he was merely doing a service for Stroup. Parenthetically, it may be stated that, when arrested, he said he gave $50 for the drug, in Chicago, and that he had gotten it for a fellow by the name of Brit, or Britten, in Creston.

The appellant relies upon three propositions, for reversal: (1) That the court erred in overruling defendant's demurrer to indictment; (2) that the court erred in its instructions relative to defendant's defense; (3) that the court's instructions were contradictory.

I. The demurrer to the indictment was based upon the following grounds: (a) "That said indictment does not specify with sufficient definiteness the time, place, and circumstances under which the said alleged crime was committed;" (b) that the indictment at no place specifies the amount or quantity of morphine alleged to be in defendant's possession; (c) that the charge does not state the form in which the morphine was.

The material portion of the indictment is as follows:

"The said Bernard Heeron, on the 27th day of February, in the year of our Lord one thousand nine hundred and twenty-six, in the county aforesaid, did willfully, unlawfully, and feloniously have in his possession and under his control a certain narcotic drug, to wit, morphine, which he did not obtain under original written prescription from a licensed physician, dentist, or veterinarian who was registered under the Federal law regulating traffic in narcotic drugs, commonly known as the Harrison Act, as amended, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Iowa."

The indictment in this case was presented under Section 3154 of the Code of 1924. Section 3155 provides exemptions from the provisions of Section 3154. Section 3156 provides that it

shall not be necessary to negative any of the exemptions under any complaint or indictment. Section 3158 provides that the possession of any narcotic drug shall be prima-facie evidence that the same was illegally purchased. The indictment in this case specifies with sufficient definiteness the time, place, and circumstances under which the crime was committed. There is no requirement that the indictment specify the amount or quantity of the drug, nor is there anything in the statute which makes it obligatory to state in the indictment the form in which the morphine was found.

The demurrer to the indictment was properly overruled.

II. As a second ground for reversal, it is claimed the court erred in stating to the jury, during the trial, that the only issue was the possession of narcotics, in view of the defense of entrapment made by the defendant. During the trial of the case, and while the county attorney was presenting the case in argument to the jury, he was interrupted by the attorney for the defense, who made some objection to some statements just made by the county attorney, whereupon the court sustained the objection, and said:

"The only matter in issue will be submitted to the jury, and it is the question of whether or not the defendant had *illegal possession of narcotics,* and that is the only thing that should be made a matter of argument at this time. Proceed. All parties affected adversely by the ruling and remarks of the court are given an exception."

It will be noted the court did not say to the jury that the only issue was the possession of narcotics. The court referred only to the *illegal* possession of narcotics.

Under the statute, possession of narcotics under certain circumstances is not illegal. Furthermore, the question of entrapment was fully submitted to the jury, after clear and specific instructions which were very favorable to the defendant. There was no reversible error in the statement of the court.

III. It is claimed by the defendant that the court erred in giving contradictory instructions, particular stress being laid upon an alleged contradiction between Instructions Nos. 7, 8, 9,

 and 10, and Instructions Nos. 11 and 12. Instructions Nos. 7, 8, 9, and 10 cover generally the law in reference to the illegal possession of narcotics. Instructions Nos. 11 and 12 deal specifically with the defense of entrapment. A careful examination of the instructions clearly shows that, when considered as a whole, they not only correctly stated the law, but were very fair to the defendant. Among other things, the court said:

"However, no man should be convicted of the violation of such laws where he had no criminal intent to violate the same, but is induced to become a law violator by reason of the arts and wiles of public officials, to depart from the path of being a law-abiding citizen into the commission of crime. When the criminal design originates not with the accused, but is conceived in the mind of the state or government officials, and the accused is, by persuasion, deceitful representation, or inducement, lured into the commission of a criminal act, the State is estopped from prosecuting therefor, and a defendant should not be convicted, under such circumstances."

The court further stated:

"The test is, Did the criminal design originate in the mind of the accused, or was such design originated in the mind of the entrapping officer who lured the defendant into the commission of a crime in order to secure his conviction therefor?"

The defendant presented his case on the facts to the jury, on the question of whether he had been entrapped, as defined in the law, and the jury found against the defendant on that issue.

Certain agents of the government charged with enforcing the so-called "Narcotic Laws" figured more or less conspicuously in the case. They spent several days in Creston before the defendant left Creston to go to Chicago, where he purchased the morphine. Their connection with the case was for the purpose of securing sufficient evidence with which to prosecute the defendant for the crime with which he was charged. Notwithstanding all the evidence introduced on this subject of entrapment, the jury, under proper instructions of the court, found against the defendant. The law on this subject is well stated by San-

born, circuit judge, in *Butts v. United States,* 273 Fed. 35, as follows:

"It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution." (Citing many cases.)

We find no prejudicial error in the case, and therefore it must be, and is,—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.