(No. 5383.   July 25, 1929.)

STATE, Respondent, v. BENJAMIN McKEEHAN, Appellant.

[279 Pac. 616.]

Morgan & Keane, for Appellant.

W. D. Gillis, Attorney General, and Leon M. Fisk, Assistant Attorney General, for Respondent.

. T. BAILEY LEE, J.—Defendant, Benjamin McKeehan, was convicted of selling the prosecuting witness, Sturman,

certain intoxicating liquors, consisting of moonshine whisky, and he has appealed.

It appears that the sheriff, Charles Summerfield, had engaged Sturman to assist him in securing evidence of bootlegging against the defendant. After reciting his solicitation of defendant at defendant's home, Sturman testified that defendant went to Troy in quest of a supply; that he followed him to town and back to the residence, where defendant told him that he had two pints that the former might have, and went into the house and got them for him. For the two pints of moonshine, Sturman swore he paid defendant $4.

Defendant testified that on August 24th he was approached near his home by Sturman and was by him given the "supposition" that Sturman was sick or "had been sick," and that the latter asked him if he had any moonshine or knew where any could be got, to which questions defendant answered: "No." That about an hour later, Sturman came back and said: "Can't you get me anything at all? I am sick and have to have it." His response, as testified by himself, was: "No, I haven't got anything. If you are sick, and it will help you ont any, I am going to town, and I will see if I can get any down there, or help you get some, and you can follow me into town."

The rest of his story touching his conduct thereafter was as follows:

"I got out of the car, and went across the street to the Pastime poolhall, and ran onto a fellow . . . . , and he was a rum runner from Spokane to Lewiston, Idaho, . . . . and I asked him if he had anything then, that there was a fellow here sick that wanted to have something to drink, and wanted him to let me have two pints if he had it, and I bought the two pints off from him for four dollars, paid him two dollars a pint and put it in my pocket and went back over to the car, and Sturman was watching to see if I would get that, and drove out to deliver it to him, and I turned around at the intersection in front of Williamson's store, and started out on the Moscow road, and Sturman was ahead of

me, and he drove up by the lumber yard of the Troy Lumber Co.'s factory and I drove up there and Sturman had stopped, stopped right by the lumber yard, and I drove up there practically right by the side of him, and got out of the car and walked around and gave him the two pints, and he said, 'How much is that?' I says, 'I paid four dollars for it and you can repay me,' and he paid me the four dollars and got in his car and drove on through.''

That defendant bought the liquor with his own money is admitted. That he delivered it to Sturman for a consideration of four dollars is also admitted. He had the absolute title to it, and could not have been divested of it save by an official seizure of it as a thing banned by law. Would anyone say that Sturman could have ever acquired title to it without first satisfying or offering to satisfy defendant first? That defendant's purpose may have been kind or benevolent cuts no figure, so far as the bald sale is concerned. As a good Samaritan, he might be entitled to some immunity, but the fact remains that he owned two pints of moonshine whisky which he proceeded not to give Sturman, but to sell him. For this reason, the court's instruction that ''One who procures intoxicating liquors at the request of another, and delivers the liquor to such other person, and accepts payment for such liquor is guilty of the offense charged, to wit: that of selling intoxicating liquor,'' although erroneous as a general proposition of law, worked the defendant no prejudice. We say ''erroneous,'' since the instruction contained no exception of sales manifestly recognized as legitimate under the law.

But the defendant had positively testified to the defense of entrapment, and tendered an instruction on that defense, which was by the court refused. Entrapment is a proper defense. The rule is well stated in 16 C. J., p. 88, par. 57, where, sustaining the liability of the defendant who violates the law at the solicitation of a detective, the writer observes that the offense committed must be ''free from the influence or instigation of the detective.'' A fuller discus-

116

sion of the principle is set forth in the same citation under note 60. Also, *State v. McCornish*, 59 Utah, 58, 201 Pac. 637.

■ The defendant submitted this special defense. Whether it was true or glibly made up out of the whole cloth was a question that should have gone to the jury under proper instructions.

Judgment reversed and cause remanded for a new trial. Costs to appellant.

Wm. E. Lee and Varian, JJ., concur.

Budge, C.· J., and Givens, J., dissent.