**O'BRIEN v. UNITED STATES, and four other cases.**

**No. 4503.**

Circuit Court of Appeals, Seventh Circuit.

July 27, 1931.

Wilbur A. Royse, Clarence W. Nichols, and Fred R. Bonifield, all of Indianapolis, Ind., for appellants.

George R. Jeffrey, U. S. Atty., and Alexander G. Cavins and Telford B. Orbison, Asst. U. S. Attys., all of Indianapolis, Ind., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

The five appellants, O'Brien, Ridenbaugh, Lambert, Curran, and Gray, all police officers of the city of Indianapolis, were indicted with others on three counts of an indictment, two of which were dismissed as to appellants. The remaining count charged: "That * * * (appellants and others) * * * on or about the first day of January, 1929, and thereafter continuously, did then and there unlawfully, wilfully, knowingly, corruptly and feloniously combine, conspire, confederate, arrange and agree together and with each other and with other persons * * * unknown, to commit an offense * * * which offense was that they * * * would then and thereafter and in the said district unlawfully and feloniously and for beverage purposes, transport, possess for sale and sell alcohol and other intoxicating liquors fit for beverage purposes * * * and would unlawfully maintain in the City of Indianapolis * * * rooms, buildings and places wherein such alcohol and other intoxicating liquors would be so sold and would be unlawfully kept therefor."

The jury found all the appellants guilty. O'Brien and Ridenbaugh were sentenced to four months' imprisonment; Lambert was sentenced to imprisonment for ninety days; Curran and Gray were each given a sixty-day sentence. As to the other eight defendants named in the indictment, three were never apprehended, one pleaded guilty, one was dismissed upon direction of the court, and three others were found guilty. One of these three obtained a new trial. Of the thirteen defendants, seven were policemen. One obtained a new trial, one was dismissed by the court for want of evidence to connect him with the alleged conspiracy. The other five have appealed.

The assigned errors are: (1) Refusal to direct a verdict in favor of each appellant;

(2) the entering of a judgment upon the verdict when the evidence was such as to estop the government from prosecuting the case.

On August 14, 1930, three prohibition agents, Kroencke, McGrath, and Wilson, in connection with one Lyle, opened what appeared to be a pool room in the city of Indianapolis. Lyle, who was placed in charge of the business, was a decoy employed by the prohibition agents, ostensibly to operate the pool room, but in reality to secure evidence against violators of the prohibition law. Lyle was loaned to the government agents by the state officials of Indiana. He had been previously engaged in the bootlegging business in Indianapolis.

EVANS, Circuit Judge (after stating the facts as above).

Appellants challenge the sufficiency of the evidence to support the verdict. They deny that it disclosed a conspiracy or, if such conspiracy be shown, a guilty participation in it by any appellant.

[1] As to the first objection, little need be said other than to state our conclusions. That there was a conspiracy to violate the prohibition law, there can be no doubt. The conspiracy was conceived by the three prohibition agents, who enlisted the services of a decoy, Lyle, to more effectually accomplish their object. A place was rented, ostensibly for the operation of a pool hall. At this place, liquor was possessed, sold, and given away, as well as transported to and from it. While the record seems barren of proof as to actual sales therein, positive proof established the fact that liquor was brought to the place and distributed by Lyle to the several policemen who called at the place at various times. It might be urged, perhaps, that the object of the conspiracy was to entrap certain suspected offenders. Nevertheless such entrapment was to be accomplished through the violation of the Prohibition Act. As a conspiracy may have several objects, it follows that, if one of its objects be the violation of a federal law, it falls within the condemnation of the statutes. U. S. v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 59 L. Ed. 1211; Frohwerk v. U. S., 249 U. S. 204, 209, 39 S. Ct. 249, 63 L. Ed. 561; Taylor v. U. S. (C. C. A.) 2 F.(2d) 444; Allen v. U. S. (C. C. A.) 4 F.(2d) 688.

Whether appellants, or any of them, joined in the conspiracy is a much closer fact question. Our consideration of the evidence must, in view of the question presented (the existence of sufficient evidence to go to the jury), be limited largely to a review of the government's testimony. The fact that the appellants disputed the government's witnesses, and denied guilty participation in any offense, was evidence for the jury to consider and weigh. If any evidence tended to establish the offense charged, however, the denial by appellants would not avoid the necessity of submitting the fact issues to the jury. The government's case would no doubt have been much stronger had Lyle, who represented the prohibition agents and played the leading role in the conspiracy, testified. His nonappearance, while perhaps weakening the government's case, was not fatal to the prosecution. His nonappearance may, too, be accounted for, because the unenviable part he played would probably have made him valueless or worse than valueless as a witness. Nevertheless, appellants' criticism of his nonappearance is appreciated, and the evidence has been examined with that fact as a background.

The only offense charged in this indictment was a conspiracy to violate the Prohibition Act. The evidence tending to show that the various officers were corrupted by money bribes, by liquor, or by free drinks, bore only on the appellants' alleged guilty participation in the conspiracy.

Considering all of the evidence and not overlooking the position and duty of a police officer, we cannot say that the court erred in submitting the case to the jury. No doubt the appellants did not know the extent of the conspiracy, nor the names of all those who participated in it. They did know that there was an unlawful enterprise being conducted in the pool hall, and they, knowing such facts, gave active aid and support to its successful consummation. The support which one may give to an unlawful conspiracy naturally differs. There are leading and minor roles to be played. One actor is active, another nonactive. Omissions may, under certain circumstances, be tantamount to acts of commission. Guilt may in some instances be established by nondoing, as well as by affirmative acts, provided the intended and actual effect of such nonaction is to advance or consummate the object of the conspiracy. Allen v. United States (C. C. A.) 4 F.(2d) 688.

Entrapment; Estoppel. A difficult question is presented by the record, so far as the issue of entrapment is concerned. The district judge submitted this issue to the jury with instructions as favorable to appellants

as they could have legitimately requested. He charged the jury:

"We have a rule of law, Gentlemen, which says that if an officer, or a person places into the mind of someone else that he should commit a crime, when that was not in that person's mind until it was so placed there, and he goes ahead and commits that crime, he cannot be convicted if the person who placed that into his mind, does it for the purpose of entrapping him. That is to say, they must have a strong suspicion that the person is a law violator, or that person must do something himself to invite the invitation to commit a crime, before it can be suggested by someone else, and not be considered as an entrapment. Because, in this land of ours, Gentlemen, public policy forbids that officers sworn to enforce the law, should seek to have that law violated, or that those whose duty it is to detect criminals, should create them.

"That is to say, in this case, public policy says that a prohibition officer who is sworn to enforce the law, should not, himself, seek to violate that law, and that they whose duty it is to detect crime, should not create it.

"So that when an officer induces a person who has had no intention of committing a crime, to violate the law, the Courts will not lend their aid in the punishment of persons thus lured into committing crime.

"I think that is a fair statement of the law, Gentlemen, with reference to entrapment. That is to say, if the prohibition officers induced these defendants to violate the law, these defendants not having in their minds, at that time, and having no intention to commit a crime, or violate the law, and these prohibition officers not having had sufficient knowledge that they had been violating the law, then you cannot punish the Defendants for doing the things that they are charged in this Indictment with having done, because that would be contrary to public policy under our law.

"* * * If, * * * you have a reasonable doubt as to whether or not these Defendants were entrapped into doing the things that they did—if you find they did those things—as the term 'entrapment' has heretofore been explained to you, in these instructions, then it is your duty to return a verdict of not guilty."

In view of this charge, the only error upon which appellants could rely arises out of the court's failure to direct a verdict. To determine this question, we must examine the evidence and apply the proper law.

There was evidence which supported the prohibition officers in their asserted belief that the National Prohibition Act was being extensively violated in Indianapolis, and this violation was in part attributed to the nonaction, if not to the connivance, of the police officers of the city. Certain prohibition agents made a preliminary investigation of the conditions in Indianapolis and found that certain police officers not only failed to enforce the prohibition law of the state of Indiana, but aided in the violation of the National Prohibition Act and they accepted bribes from others who violated the act. Doubtless, the extent to which the Indianapolis police force winked at violations of the National Prohibition Act was unknown, and the prohibition agents proceeded to gather the information by tempting those who called at the pool hall.

Assuming their purposes to be legitimate, an inquiry as to the means by them adopted is necessary to determine this question of entrapment. In approaching this question, it is assumed that there are instances in criminal law, as well as in civil actions, where the end, though laudable enough, does not justify the means.

It would seem that the natural and logical approach to this subject of entrapment must be through the application of the doctrine of estoppel. Individuals, in dealing with each other, are not permitted to assert rights or enforce remedies when their own acts induced another to commit the wrong out of which arose the right sought to be enforced. "Estoppel is founded on morality and justice, and especially concerns conscience and equity."

We see no reason why the government should not be subjected to the same rule of conduct. Although it be a sovereign, it should not be permitted to adopt means which are condemned by the courts when practiced by its citizens. It may not be sued save with its consent, it is true, but if it comes into court, it is as a litigant.

If the conduct of one be unconscionable, if it be intentionally deceptive and designed to induce, and does induce another to do something *which he would not otherwise have done*, the wrongdoer is not and should not be permitted to profit thereby. This rule, widely invoked in civil actions, has been applied to the government in the prosecution of its criminal cases. Similar questions are arising with ever increasing frequency in criminal cases involving prosecutions under the National Prohibition Act. Decisions

678

dealing with this subject and the practice questions growing out of it are collected and classified in the footnote.[1]

Generally the courts have considered the question under the head of entrapment, but whether it be called entrapment or estoppel, it would seem that the essential elements of an estoppel must exist before the government is denied a judgment because of such conduct.

In the case of Voves v. U. S., 249 F. 191, 192, Judge Baker, speaking for this court, said:

"Grant that the government may use a decoy to discover evidence of a committed crime of whatever nature; that, where one has the intent to commit a malum in se, or the willingness to do a malum prohibitum, a decoy may accompany the wrongdoer and even participate in the offense; that a liquor seller is guilty, despite his honest and

[1] I. Cases Holding No Entrapment:
A. Federal Cases:
Casey v. United States, 276 U. S. 413, 48 S. Ct. 373, 72 L. Ed. 632; Price v. U. S., 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727; Rosen v. U. S., 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606; Grimm v. U. S., 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Montgomery v. U. S., 162 U. S. 410, 16 S. Ct. 797, 40 L. Ed. 1020; Scott v. U. S., 172 U. S. 343, 19 S. Ct. 209, 43 L. Ed. 471; U. S. v. Smith, 43 F.(2d) 173 (D. C. Tex.); Patton v. U. S., 42 F.(2d) 68 (C. C. A. Okl.); Swallum v. U. S., 39 F.(2d) 390 (C. C. A. Iowa); Vaccaro v. Collier, 38 F.(2d) 862 (D. C. Md.); Buckley v. U. S., 33 F.(2d) 713 (C. C. A. Ohio); De Mayo v. U. S. (C. C. A.) 32 F.(2d) 472; Polski v. U. S., 33 F.(2d) 686 (C. C. A. 8); Sauvain v. U. S. (C. C. A.) 31 F.(2d) 732; Lawrence v. U. S. (C. C. A.) 28 F.(2d) 608; Shields v. U. S., 58 App. D. C. 215, 26 F.(2d) 993; Cain v. U. S., 19 F.(2d) 472 (C. C. A. Minn.); Hadley v. U. S., 18 F.(2d) 507 (C. C. A. Okl.); U. S. v. Washington, 20 F.(2d) 160 (D. C. Neb.); St. Clair v. U. S., 17 F.(2d) 886 (C. C. A. Neb.); Porter v. U. S., 31 F.(2d) 544 (C. C. A. Iowa); Sargent v. U. S., 35 F.(2d) 344 (C. C. A. Wash.); Thomas v. U. S., 27 F.(2d) 1023 (C. C. A. Ohio); Vamvas v. U. S., 13 F.(2d) 347 (C. C. A. Fla.); Kendjerski v. U. S., 9 F.(2d) 909 (C. C. A. Ohio); De Long v. U. S., 4 F.(2d) 244 (C. C. A. Neb.); Scriber v. U. S., 4 F.(2d) 97 (C. C. A. Mich.); Orsatti v. U. S., 3 F.(2d) 778 (C. C. A. Cal.); Reyff v. U. S., 2 F.(2d) 39 (C. C. A. Cal.); Conway v. U. S., 1 F.(2d) 274 (C. C. A. Ill.); Rosso v. U. S., 1 F.(2d) 717 (C. C. A. N. J.); Bethea v. U. S., 1 F.(2d) 290 (C. C. A. Ill.); Napolitano v. U. S., 3 F.(2d) 994 (C. C. A. Me.); De Marco v. U. S., 296 F. 667 (C. C. A. Va.); Murphy v. U. S., 2 F.(2d) 599 (C. C. A.); Johnstone v. U. S., 1 F.(2d) 928 (C. C. A. Wash.); Aultman v. U. S., 289 F. 251 (C. C. A. Tex.); U. S. v. Pappagoda, 288 F. 214 (D. C. Conn.); U. S. v. Reisenweber, 288 F. 520 (C. C. A. 2); Zucker v. U. S., 288 F. 12 (C. C. A. N. J.); Ritter v. U. S., 293 F. 187 (C. C. A. Nev.); Browne v. U. S., 290 F. 870 (C. C. A. Mich.); Rossi v. U. S., 293 F. 896 (C. C. A. Colo.); Luterman v. U. S., 281 F. 374 (C. C. A. Pa.); Fisk v. U. S., 279 F. 12 (C. C. A. Tenn.); Martin v. U. S., 278 F. 913 (C. C. A. 2); Rothman v. U. S., 270 F. 31 (C. C. A. 2); Farley v. U. S., 269 F. 721 (C. C. A. Wash.); Saucedo v. U. S., 268 F. 830 (C. C. A. Tex.); Ramsey v. U. S., 268 F. 825 (C. C. A. Tenn.); Partan v. U. S., 261 F. 515 (C. C. A. Or.); Fetters v. U. S., 260 F. 142 (C. C. A. Cal.); Goldstein v. U. S., 256 F. 813 (C. C. A. Ill.); U. S. v. Amo, 261 F. 106 (D. C. Wis.); Jung Quey v. U. S., 222 F. 766 (C. C. A. Cal.).
B. State Court Decisions:
People v. Ficke, 343 Ill. 367, 175 N. E. 543; State v. Cowling (Wash. 1931) 297 P. 172; State v. McKenzie (Minn.) 235 N. W. 274; State v. Hoyt (Mo. Sup.) 24 S.W.(2d) 981; State v. Franco (Utah) 289 P. 100; Piper v. State (Wis.) 231 N. W. 162; Terrell v. State, 89 Ind. App. 125, 166 N. E. 8; State v. Heeron, 208 Iowa, 1151, 226 N. W. 30; State v. Lovell, 127 Kan. 157, 272 P. 666; State v. Erlich, 154 Wash. 336, 282 P. 220; State v. Webster, 46 Idaho, 798, 271 P. 578; French v. State, 149 Miss. 684, 115 So. 705; People v. Millum, 103 Cal. App. 163, 284 P. 224; State v. Murphy, 320 Mo. 219, 6 S.W.(2d) 877; State v. Sheeler, 320 Mo. 173, 7 S.W.(2d) 340; State v. Jarvis, 105 W. Va. 499, 143 S. E. 235; Claxton v. People, 82 Colo. 115, 257 P. 347; Warren v. State, 35 Okl. Cr. 430, 251 P. 101; People v. Ramirez, 95 Cal. App. 140, 272 P. 608; State v. Ragan, 157 Wash. 130, 288 P. 213; State v. Wong Hip Chung, 74 Mont. 523, 241 P. 620; State v. Johnson, 49 S. D. 414, 207 N. W. 216; DeBell v. People, 79 Colo. 137, 244 P. 600; State v. Kirkbride, 34 Wyo. 98, 241 P. 709; People v. Harris, 80 Cal. App. 328, 251 P. 823; People v. Amort, 60 Cal. App. 29, 212 P. 50; People v. Rodriguez, 61 Cal. App. 69, 214 P. 452; People v. Caiazza, 61 Cal. App. 505, 215 P. 80; In re Moore, 70 Cal. App. 483, 233 P. 805; Plue v. People, 69 Colo. 250, 193 P. 496; Simmons v. People, 70 Colo. 262, 199 P. 416; State v. See, 177 Iowa, 316, 158 N. W. 667; Cooke v. Commonwealth, 199 Ky. 111, 250 S. W. 802; State v. Abraham, 158 La. 1021, 105 So. 50; People v. McIntyre, 218 Mich. 540, 188 N. W. 407; People v. England, 221 Mich. 607, 192 N. W. 612; State v. Contarino, 92 N. J. Law, 381, 105 A. 197; Mullikin v. State, 32 Okl. Cr. 226, 240 P. 1099.
II. Cases Holding Entrapment:
A. Federal Decisions:
U. S. ex rel. Hassel v. Mathues, 22 F.(2d) 979 (D. C. Pa.); Butts v. U. S., 273 F. 35, 18 A. L. R. 143 (C. C. A. 8); U. S. v. Eman Mfg. Co., 271 F. 353 (D. C. Colo.); U. S. v. Lynch, 256 F. 983 (D. C. N. Y.); U. S. v. Echols, 253 F. 862 (D. C. Tex.); Voves v. U. S., 249 F. 191 (C. C. A. 7); Sam Yick v. U. S., 240 F. 60 (C. C. A. Cal.); Woo Wai v. U. S., 223 F. 412 (C. C. A. 9); U. S. v. Thompson, 202 F. 346 (D. C. Cal.); U. S. v. Healy, 202 F. 349 (D. C. Mont.); Cline v. U. S., 20 F.(2d) 494 (C. C. A. 8).
B. State Court Decisions:
State v. Mantis, 32 Idaho, 724, 187 P. 268; State v. McCornish, 59 Utah, 58, 201 P. 637; Koscak v. State, 160 Wis. 255, 152 N. W. 181; Shouquette v. State, 25 Okl. Cr. 169, 219 P. 727.
III. Entrapment a Jury Question:
Robinson v. U. S., 32 F.(2d) 505, 66 A. L. R. 468 (C. C. A. 8); Jarl v. U. S., 19 F.(2d) 891 (C. C. A. Neb.); Hadley v. U. S., 18 F.(2d) 507 (C. C. A. Okl.); Cermak v. U. S., 4 F.(2d) 99 (C. C. A. Ohio); Di Salvo v. U. S., 2 F.(2d) 222 (C. C. A. 8); Silk v. U. S., 16 F.(2d) 568 (C. C. A. 8); Peterson v. U. S., 255 F. 433 (C. C. A. Cal.); Butts v. U. S. (C. C. A.) 273 F. 35, 18 A. L. R. 143; State v. Decker (Mo. Sup.) 33 S.W.(2d) 958; State v. McKeehan, 48 Idaho, 112, 279 P. 616.
IV. Evidence Not Sufficient to Require Submission to Jury on Entrapment:
Hall v. U. S., 46 F.(2d) 461 (C. C. A. 4); Polski v. U. S. (C. C. A.) 33 F.(2d) 686; Grove v. U. S., 3 F.(2d) 965 (C. C. A. Md.); Vamvas v. U. S., 13 F.(2d) 347 (C. C. A. Fla.); Kendjerski v. U. S. (C. C. A.) 9 F.(2d) 909; Brown v. U. S., 260 F. 752 (C. C. A. Cal.); Bakotich v. U. S., 4 F.(2d) 386 (C. C. A. Or.); State v. Webster, 46 Idaho, 798, 271 P. 578; State v. Lambert, 148 Wash. 657, 269 P. 848; State v. Chacon, 37 Idaho, 442, 216 P. 725; State v. Clark, 117 Kan. 133, 230 P. 318; State v. Hicks (Mo. Sup.) 33 S.W.(2d) 923.
V. Evidence Required Submission to Jury on Entrapment:
Driskill v. U. S., 24 F.(2d) 525 (C. C. A. Ariz.); State v. Decker, 321 Mo. 1163, 14 S.W.(2d) 617; People v. Gallagher, 107 Cal. App. 425, 290 P. 504. See cases cited under IIA.

reasonable belief respecting the age or race of the purchaser; and even that he must take his chance that a purchaser, who is not a government decoy, may willfully deceive him by camouflage—still the question remains: May the government maintain an indictment against a person for doing a malum prohibitum when the government's conduct has misled the person into believing that the prohibited act was a lawful act?

"In a civil transaction between citizens such conduct as the jury might have found in this case would create an estoppel which would preclude a suit based upon the suppressed truth. Is our government of the superman type that releases the ruler from the obligations of honesty and fairness that are imposed upon the citizens? Is one's liberty or reputation as a law-abider to have less protection than his property? We are strongly of the view that sound public policy estops the government from asserting that an act which involves no criminal intent was voluntarily done when it originated in and was caused by the government agents' deception."

In Woo Wai v. United States (C. C. A.) 223 F. 412, 415, the court said: "We are of the opinion that it is against public policy to sustain a conviction obtained in the manner which is disclosed by the evidence in this case, taking the testimony of the defendants to be true, and that a sound public policy can be upheld only by denying the criminality of those who are thus induced to commit acts which infringe the letter of the criminal statutes. Some of the courts have gone far in sustaining convictions of crimes induced by detectives and by state officers. This is notably so of the decision in People v. Mills, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131. But it is to be said, by way of distinguishing such cases from the case at bar, that in all of those cases the criminal intention to commit the offense had its origin in the mind of the defendant."

Attempting to distinguish between the cases involving the legitimate use of decoys to detect a crime and those dealing with evidence showing an inducement on the part of the government, we said in the case of Goldstein v. United States, 256 F. 813, 815: "* * * Something more than the mere use of decoys or detectives by the government is necessary to raise an issue of estoppel. * * * There must be deception of such a character as to make it unconscionable for the government to press its case."

The evidence in that case clearly showed

that the criminal intent was lodged in the defendant's mind before the government agent gave him an opportunity to carry it out. Defendant was ready and prepared to commit the crime when the opportunity presented itself.

Like questions were considered in Casey v. United States, 276 U. S. 413, 418, 48 S. Ct. 373, 374, 72 L. Ed. 632. There the majority opinion and a dissenting opinion both dealt with the subject of entrapment. In the majority opinion, the conclusion was reached that the government was not estopped from prosecuting the case. We quote therefrom: "We do not feel at liberty to accept the suggestion that the Government induced the crime. A Court rarely can act with advantage of its own motion, and very rarely can be justified in giving judgment upon grounds that the record was not intended to present. * * * Furthermore Casey according to the story, was in no way induced to commit the crime beyond the simple request of Cicero to which he seems to have acceded without hesitation and as a matter of course. * * We are not persuaded that the conduct of the officials was different from or worse than ordering a drink of a suspected bootlegger."

The test deducible from these decisions turns upon the issue of inducement. If the accused entertained the criminal intent before he was afforded the opportunity to violate the law, he is in no position to plead estoppel. Usually such intent is disclosed by words spoken or deeds committed before the decoy is used. Under such circumstances he cannot be heard to say that he would not have violated the law but for the action of the government's agent. In short, applying the doctrine of estoppel, he was not led into the commission of the crime by anything which the government's agent said or did. It is the fact that one was induced to act in a manner in which he would not otherwise have acted, by the inducement of another, that makes applicable the doctrine of estoppel.

The government is guilty of no misconduct when it endeavors to discover wrongdoing and punish the wrongdoer. To secure the evidence to establish the commission of a crime, it becomes necessary at times to use decoys to discover the commission or catch the transgressor in the act of committing the offense. But it is unnecessary to the due administration of the criminal laws and it shocks the court's sense of justice to permit a prosecution to proceed where the evidence shows the offender was innocent of wrong-

doing and free of evil intent prior to his acquaintance with the government or state representative, who, in the professed cause of law enforcement, proceeds, first to corrupt the accused's mind by possibilities of profit and gain through violation of the statutes and then, surrounded by accomplices as witnesses, awaits the downfall and ignominy of the victim.

Applying these tests to the case at bar, we find no evidence in the record which would indicate that any of the appellants had, prior to the opening of the pool hall, disclosed any disposition to enter into a criminal conspiracy to violate the prohibition law. There was evidence tending to show a widespread violation of the National Prohibition Act in the city of Indianapolis, and that policemen in that city either aided others in violation of the act or were willing to accept bribes from those who trafficked illegally in intoxicating liquor. The evidence, however, does not show, prior to the formation of the conspiracy charged in the indictment, that any one of the appellants was guilty of such misconduct. Such evidence as was given on this subject dealt with the police force generally, rather than with any law violations by appellants.

Moreover, the offense charged is conspiracy. This offense is, of course, separate and distinct from the various crimes which may be the object of the conspiracy. We think there is a vast difference between the use of decoys for the purpose of discovering crimes and apprehending criminals and the use of decoys to induce others to join an unlawful conspiracy originated by the government for the purpose of securing the violation of laws by others. Two cases have been found, State v. Dougherty, 88 N. J. Law, 209, 96 A. 56, L. R. A. 1916C, 991, Ann. Cas. 1917D, 950, and Woodworth v. State, 20 Tex. App. 375, where the courts refused to sustain a conviction on conspiracy charges where the conspiracies originated with the state officials, and which had for their object the detection of substantive crimes. The conspiracy charge in the indictment herein originated with the prohibition agents. It cannot be divided into two enterprises, one legal and one illegal. If the conspiracy were unlawful, it must have been so not only as to those who subsequently joined it, but also as to those who originated it.

Such a situation is not dissimilar to the case where one arranges through a third party for a robbery to be committed upon himself with a view of receiving a reward, or a case of burglary where the entry was made through the assent of those who were in the occupancy and control of the building burglarized.

Had this case been one for the prosecution of the substantive offense, the evidence, meager as it was, perhaps presented a jury question on the issue of inducement by the prohibition agents. Such questions, like other questions of fact are, under the authorities cited, for the jury to determine. But the government here charged conspiracy, and it must be held to that charge alone.

We conclude that the evidence conclusively established an estoppel against the government on the charge presented, and the motion to direct a verdict for the defendants should have been granted.

The judgment is reversed.