## MEYER v. UNITED STATES.
### No. 7193.

Circuit Court of Appeals, Ninth Circuit.
Oct. 16, 1933.

---

Lord, Moulton & Krause, of Portland, Or., for appellant.

Carl C. Donaugh, U. S. Atty., and Edwin D. Hicks, Asst. U. S. Atty., both of Portland, Or.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

In respective counts of an indictment filed in the District Court, appellant and two defendants, Thomas Seslar and Rand Cole, were jointly charged with possession and transportation of a quantity of intoxicating liquor in violation of the National Prohibition Act (27 USCA § 12). A trial by jury was had, and appellant and Seslar were convicted on both counts, and Cole was acquitted on both counts.

From the judgment on the verdict of guilty, appellant alone has appealed, and contends, principally, that "he was the victim of an entrapment evolved by the government investigator," and that the court erred in overruling his motion for a directed verdict interposed at the close of the trial on that ground.

Appellant also contends that the court erred in commenting to the jury, in the course of its instructions, on the validity of the defense of entrapment.

Appellant likewise contends that the court erred in denying his motion for a directed verdict, interposed at the close of the trial on the ground "that there is no testimony showing or tending to show, or upon which the jury could base a finding that defendant Meyer is guilty of either possession or transportation of this liquor, either by any act he did himself, or any he aided and abetted."

We will first consider the defense of "entrapment." The term entrapment and defenses based thereon, as well as the manner in which the defense may be raised, have been considered by the courts many times, and a number of the cases are collated in Sorrells v. United States, 287 U. S. 435, 53 S. Ct. 210, 77 L. Ed. 413, and O'Brien v. United States (C. C. A.) 51 F.(2d) 674, and in the notes thereto.

In his concurring opinion in the Sorrells Case (page 454 of 287 U. S., 53 S. Ct. 210, 217), Mr. Justice Roberts defined "entrapment" as "the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." In observing that the defense of entrapment is available to a defendant, Mr. Chief Justice Hughes, writer of the main opinion in the Sorrells Case, said (page 444 of 287 U. S., 53 S. Ct. 210, 213): "The federal courts have generally approved the statement of Circuit Judge Sanborn in the leading case of Butts v. United States, supra [(C. C. A.) 273 F. 35, 38, 18 A. L. R. 143], as follows: 'The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it.'" And, at pages 441, 445 of 287 U. S., 53 S. Ct. 210, 212, the Chief Justice said: "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. [Citing cases.] The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. * * * In Newman v. United States, supra [(C. C. A.) 299 F. 128, 131], the applicable principle was thus stated by Circuit Judge Woods: 'It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime.

But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor.' "

In this connection, Weaver, the government agent, testified in substance that he first met appellant on January 13, 1933, about noon, through an informer named Ryan, in front of a pool hall on Grand avenue, Portland; that Ryan introduced the witness to appellant "as a liquor dealer from Goldendale, Washington"; that the witness asked appellant about his whiskey; that appellant said "he had good whiskey, and made the suggestion that I come over to his apartment and he would give me a sample"; that they thereupon proceeded to appellant's apartment, at No. 8 East Sixth Street North, "and there he gave me a sample of whiskey from a gallon jug, and I told him it was good and I asked him to sell me a pint and he did"; that the witness then brought up the subject of quantity, and appellant replied that if he took twenty gallons the price would be $3 a gallon; that the witness arranged with appellant for a delivery of twenty gallons of whisky that afternoon at 3 o'clock; that he was to meet appellant in front of the pool hall on Grand avenue and appellant was to take him to No. 8 East Sixth Street North, or around the corner on Ankeny street, where he would have the twenty gallons of whisky. The witness testified further: "I next saw him [appellant] between 2:45 and 3:00 o'clock P. M. the same afternoon in the pool room where I first met him. I walked in and he was playing pool with some one and I asked him if everything was O. K. and he said we would have to wait a little bit, and another party walked up to me and he said, 'He stepped out to get a check cashed, and will be back pretty soon,' and Meyer said, 'You are not in a hurry, are you?' I said, 'Yes, I am.' He says, 'He might be back here in a few minutes.' I said, 'All right, I will go out and sit in the car and wait.' I went out and sat in my car directly in front of this pool room. About five minutes after that Mr. Meyer, accompanied by Mr. Cole and Mr. Seslar [the codefendants] came to the right hand side of my car, out of this pool room. Mr. Meyer opened the door of my car and he said, 'We have changed our plans a little bit.' * * * 'We are not going to deliver the whiskey to you where I told you we would up there at my place. We will take your car and we will get the whiskey. It won't take very long, and we will bring it back and bring your car some where, then we will let you know where it is, and you can take the car and get it.' I says, 'No I won't stand for any transaction like that,' and Mr. Seslar says, 'I will be damned if I will take him out there' and started to walk away, and Mr. Cole then said, 'Wait a minute. You let this be'— speaking to both I and Seslar—'We will take your car and you take our car and you follow us out to East 39th and Glisan Streets, and it is just a few blocks from there where we are going to get this whiskey, and one of us will stay with you, and it will only be a few minutes until we come back. You let that be'. And I said, 'Well, I don't know the town, I don't know where this is.' Mr. Meyer says, 'Well I will go with you.' So Seslar, driving my car, with Rand Cole accompanying him, drove off." The witness, accompanied by appellant, proceeded to the destination mentioned, and after waiting there a few minutes, Seslar arrived.

About that time, two other government agents, who testified that they had followed the above-mentioned persons and cars from the pool hall, appeared on the scene and the arrests were made. Two ten-gallon kegs of whisky were then found in Weaver's automobile, which had been driven thither by Seslar, according to the arrangement above mentioned.

Appellant took the stand and denied the material portions of Weaver's testimony, namely: That he did not sell Weaver a pint of whisky in his apartment, or at all; that he did not tell Weaver he had twenty gallons of whisky, or any quantity at all; that he did not make any arrangement with Weaver for the sale or delivery of any whisky; and that he did not take part in the conversation in front of the pool hall regarding whose car would be used for transporting the whisky, and did not suggest the use of Weaver's car. Appellant admitted, however, that he "gave" Weaver a small bottle of whisky at his apartment on the morning in question, and that he had agreed to meet Weaver at the pool hall at 3 o'clock that afternoon and would see what he could do about getting some one else to secure the twenty gallons of whisky for Weaver. He also admitted introducing Seslar to Weaver as a "fellow who might be able to get the whiskey for you."

The inconsistencies and contradictions in the testimony of the witnesses were, of course,

226

a question for the jury, and, needless to say, its determination thereof is binding on this court.

From the foregoing summary of the evidence it seems quite obvious that the conduct of the government agent was not so unconscionable or contrary to public policy as to estop a prosecution based thereon, and that appellant was not ensnared or induced into committing the offense charged against him solely through the trickery and persuasion of the agent.

In other words, appellant is not, in our opinion, being punished for the commission of an offense which he never would have committed if the government agent had not inspired, persuaded, and lured him to do so. On the contrary, it appears that appellant was ready and willing to assist the agent in purchasing the intoxicating liquor sought and that he willingly and actively participated in consummating the proposed purchase and the delivery thereof.

In any event, the evidence on the issue of entrapment was ample to justify its submission to the jury, and there was no error therefore in overruling the motion for directed verdict on that ground.

■ Nor did the court err, in our opinion, in commenting to the jury, in the course of its instructions, on the validity of the defense of entrapment. The remark of the court to which error is assigned is this: "The question upon entrapment, in my view, has very little evidence to support it." This quotation, however, is not complete, for the court continued: "But you may take it into consideration, and I say directly to you that the question is one for your determination and I leave it to you upon that basis. I charge you that your determination is absolute in the matter. * * * You are the exclusive judges of the facts in this case, and of the credibility of the witnesses. * * * I will say with reference to that that the burden lies on the Government at all times, Gentlemen, as to each defendant, and as to each count, to prove beyond reasonable doubt the allegations. Any remarks that I may have made as to affirmative defense do not overcome the fact in relation to that instruction."

The comment complained of was made after the court had fully and correctly instructed the jury on the law relating to entrapment, in accordance with the definition thereof stated by the Supreme Court in the Sorrells Case, supra.

■ Nor did the court err in refusing to direct a verdict in favor of appellant on the ground "that there is no testimony showing or tending to show, or upon which the jury could base a finding that defendant Meyer is guilty of either possession or transportation of this liquor, either by any act he did himself, or any he aided and abetted." Section 332 of the Criminal Code (18 USCA § 550) provides that: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." The court correctly instructed the jury with relation to aiding and abetting, and the evidence is ample to sustain the conviction of appellant as a principal under that statute. See Cefalu v. United States (C. C. A. 10) 37 F.(2d) 867; Smith v. United States (C. C. A. 8) 50 F.(2d) 46.

Affirmed.