THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BONIFACIO PÉREZ (*a*) PURO, Defendant and Appellant.

No. 15139. Argued November 13, 1951.—Decided November 29, 1951.

810

*Arcilio Alvarado* for appellant. *Víctor Gutiérrez Franqui, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Bonifacio Pérez [1] was accused in the District Court of Puerto Rico, San Juan Section, of a violation of § 77 of Act No. 6 of June 30, 1936 (Spec. Sess. Laws, pp. 44, 94), known as the "Spirits and Alcoholic Beverages Act." [2] The case was tried and after hearing evidence and deciding adversely to the defense certain questions of law raised, the court found the defendant guilty and sentenced him to imprisonment in jail for two months. The latter now contends that the lower court erred in failing to apply the doctrine of entrapment and that the judgment is contrary to the evidence.

The evidence for the People, which consisted exclusively in the testimony of Internal Revenue Agent José Antonio Maldonado, was to the effect that on or about August 18, 1950, said agent visited defendant's home, located in the Fanguito Ward of Santurce; that he spoke to the defendant about some rum, and that the latter told him that he could deliver to him all the rum he wanted but that he did not have any containers in which to put it; that they agreed that

---

[1] According to the record, Bonifacio Pérez is also known as Purificación and Puro.

[2] Section 77 of Act No. 6 of 1936, *supra,* provides:

"Every person having in his possession or in any place at his disposition any products subject to tax by this Act, on which the tax has not been paid, except those duly authorized by this Act, shall be guilty of a misdemeanor; . . ."

the witness would bring him twenty-one cans which the defendant would fill and deliver to him between three and four o'clock in the morning of the 19th, close to the drawbridge on the road leading from Santurce to Bayamón; that the witness went to that place at the appointed hour, accompanied by Internal Revenue Agents Pimentel and Torres; that there they saw the defendant arrive accompanied by two men, in a motor boat, with five 5-gallon containers of cane rum, none of which had affixed internal revenue stamps; that after delivering those five containers, the defendant went away and returned with sixteen containers more, each containing five gallons of the same rum; that Pérez was not arrested at that time because he ran away, but the other individuals were arrested. The defense of entrapment was raised at the same time that the containers of rum were offered in evidence, and it was repeatedly dismissed as well as, later on, a motion for nonsuit filed by the defendant, the court stating:

"The court finds that the evidence for the People tended to show the following: that the internal revenue agent who testified, went to defendant's home where the defendant had some molasses pipes; that aware of defendant's occupation, he offered to buy some rum from him; that the defendant refused offhand, but when the agent told him how much he wanted, the defendant told him that if he furnished the containers, he could get him all the rum he wanted; that the internal revenue agent, when talking to the defendant, pretended to be a rum-runner; that pursuant to that agreement, the internal revenue agent brought to the defendant twenty-one containers in which 105 gallons of cane rum were put, which were to be delivered near the drawbridge on the road leading from San Juan to Bayamón; that upon arriving there, the defendant appeared in a motor vehicle, a boat, by way of the lagoon, and that there was another motorless vehicle—a yawl—containing the carboys with cane rum; that besides the defendant, there were other persons and that upon realizing that they were internal revenue agents, the defendant ran away; that the cane rum was seized and the codefendants arrested."

Both the district attorney and the defense forthwith stated that they had nothing to add to those findings.

The defendant then offered evidence tending to show that he is engaged in the business of selling molasses, not rum; that although Internal Revenue Agent José Antonio Maldonado visited him and offered to buy a certain quantity of rum from him, he nevertheless told the agent that he was not engaged in that business; that it was Felipe Ramos Olmo, who at the time was in defendant's home buying molasses from him, who agreed to sell rum to Maldonado; that the defendant was not present when Maldonado delivered the containers to Ramos Olmo and that he did not participate either, in any manner whatsoever, in the delivery of the rum to the latter at the drawbridge. At the conclusion of that evidence, the court stated that it believed the evidence for the People, but not that for the defendant, and found the latter guilty.

The defense of entrapment does not lie when the public agent or officer is aware that the defendant is a law violator and merely avails himself of artifice or deceit to provide the latter with the opportunity to commit the offense. This has been decided in innumerable cases. See *Sorrells* v. *United States*, 287 U. S. 435, 77 L. ed. 413; 86 A.L.R. 249 and footnote on page 264; *O'Brien* v. *United States*, 51 F. 2d 674 and cases cited on page 678; 15 Am. Jur. 24, Sec. 335. Inasmuch as the lower court believed the evidence for the People, we can not say that appellant was entrapped.

On the other hand, the defense of entrapment is a positive defense which when invoked admits that the act with which the defendant is charged as a public offense was committed by him. See *People* v. *Lee*, 48 P. 2d 1003, 1007; *People* v. *Johnson*, 222 P. 2nd 58, 59; *United States* v. *Kaiser*, 138 F. 2d 219; *People* v. *Billingsley*, 139 P. 2d 362. As noted, defendant's evidence, far from admitting the act charged, tended to deny any participation therein, and the court did not believe it. Under the foregoing circumstances

the lower court acted correctly in dismissing the defense of entrapment.

■ As to the alleged error that the judgment is contrary to the evidence, it is enough to say that the defendant merely says in his brief that he submits it "by the subsequent examination of the record" and that a careful reading of the latter convinces us that it contains sufficient evidence to support the judgment rendered.

The judgment appealed from will be affirmed.